IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

MICHAEL CHIPPOLLA, )
)
                Petitioner, )     Case No. CV-06-490-S-EJL
)
v. )     **MEMORANDUM DECISION**
)     **AND ORDER**
PHILLIP VALDEZ, Warden of ICC, )
)
                Respondent. )
_____)

This case was reassigned to this Court to consider Respondent's Motion for Partial Summary Dismissal and all other pending motions. Having considered the arguments of the parties, and having reviewed the state court record in this case, and otherwise being fully informed, the Court enters the following Order.

## BACKGROUND

On September 27, 2001, Petitioner was charged with trafficking in marijuana, felon in possession of a firearm, and possession of drug paraphernalia in the Fourth Judicial District Court, in Ada County, Idaho. *State's Exhibit A-1*, pp. 37-39. Petitioner's girlfriend, Patricia Rose, was also charged with trafficking in marijuana, possession of drug paraphernalia, and misdemeanor obstructing a police officer. *Id.* The State subsequently amended the information to charge Petitioner with being a persistent violator based on three prior felony convictions for possession of a controlled substance. *Id.*, pp. 110-11.

MEMORANDUM DECISION AND ORDER 1

Petitioner filed a motion to suppress the drugs and paraphernalia, but the motion was unsuccessful.  He then proceeded to trial.  On the second day of trial, Petitioner pled guilty to and was convicted of the three original charges in exchange for an agreement that the persistent violator charge would be dismissed.  *Id.*, p. 146; *State's Exhibit A-5*, pp. 1-2. Judgment of conviction was entered on October 31, 2002.  Petitioner was sentenced to five years fixed, with seven indeterminate on the possession conviction; three years fixed, with two years indeterminate on the firearm conviction; and 180 days on the paraphernalia conviction, all to run concurrently.  *Id.*, pp. 152-55 167-69.  Petitioner was also ordered to pay a $5,000.00 fine.

After conviction, Petitioner filed a motion for return of property, a Rule 35 motion for sentence leniency, and a motion to withdraw his guilty plea.  At the time of the arrest, the sum of $2,622 in cash was seized from Petitioner.  After the hearing on the motion for return of property, the Court ordered that this sum be applied toward the $5,000 fine rather than returned to Petitioner.  *Id.*, p. 175.   The Rule 35 motion was denied.  The court held an evidentiary hearing on the motion to withdraw the guilty plea, after which the motion was denied.  *State's Exhibit A-10.*

Petitioner filed a direct appeal from the denial of all three motions.  The Idaho Court of Appeals affirmed the trial court's decision on the motion for return of property and Rule 35 motion, and it dismissed Petitioner's appeal from the denial of his motion to withdraw the guilty plea because he failed to provide any briefing on that claim.  *State's Exhibit B-7.* Petitioner did not file a petition for review with the Idaho Supreme Court.  On June 15, 2004,

MEMORANDUM DECISION AND ORDER 2

the Idaho Court of Appeals issued its remittitur.

On September 8, 2003, while his direct appeal was pending, Petitioner filed a post-conviction application. *State's Exhibit C-1*, pp. 3-9. The trial court appointed counsel for Petitioner and held a hearing on the petition. *State's Exhibit C-7*. At the post-conviction hearing, the transcript from the earlier hearing on the motion to withdraw the guilty plea was admitted as evidence. *State's Exhibit A-10.*

After denial of the post-conviction petition, Petitioner filed a notice of appeal. The State Appellate Public Defender (SAPD) was appointed to represent Petitioner on appeal. *State's Exhibit C-1*, p. 56. The SAPD filed a motion to withdraw after concluding that there were no meritorious issues for appeal. *State's Exhibits D-1 through D-3*. Petitioner filed his own briefing on appeal. *State's Exhibit D-9*. The Idaho Court of Appeals ultimately affirmed the state district court's denial of post-conviction relief. *State's Exhibit D-14.* Petitioner filed a petition for review, which was denied by the Idaho Supreme Court. *State's Exhibit D-15 & 16.* On October 30, 2006, the remittitur issued. *State's Exhibit D-22.*

Petitioner filed his current federal Habeas Corpus Petition on December 8, 2006, raising five claims. Respondent filed a Motion for Summary Judgment, arguing that Petitioner's first claim is non-cognizable and that the majority of his remaining claims are procedurally defaulted. In addition to considering the Motion and Response, the Court also

reviews Petitioner's claims on the merits and concludes that the state court record plainly shows that Petitioner is not entitled to relief on his claims.

## PETITIONER'S PRELIMINARY MOTIONS

### A.   Petitioner's Motion for Extension of Time (Docket No. 11)

Petitioner requested an extension of time in which to file his response to Respondent's Motion for Partial Summary Dismissal.  Respondent did not object.  As a result, the Motion is granted, and Petitioner's Response, filed on June 13, 2007, shall be considered timely.

### B.   Petitioner's Motion to Expand Record (Docket No. 14)

Petitioner requests expansion of the record in this case to include various items he found missing in Respondent's lodging of the state court record.  Respondent has lodged the additional records with the Court, mooting Petitioner's request.  Petitioner also  wishes to lodge a brief he attempted to file on his post-conviction appeal that was returned by the clerk of the Idaho Supreme Court.  While the brief may be somewhat relevant to the procedural default issues in this case, the Court finds that the brief is not necessary because the Court alternatively determines that Petitioner's claims are subject to denial on the merits.

Petitioner also asks the Court to consider the transcript of the suppression hearing. A full hearing on *Petitioner's* motion was not held; rather the trial court made a ruling after an abbreviated hearing, relying on the preliminary hearing transcript (*State's Exhibit A-3*). The trial court then allowed only Petitioner's *co-defendant* to proceed to full hearing.  No transcript of the hearing related to *Petitioner's* motion was ever prepared, but detailed minutes from the abbreviated hearing on his motion are contained in the record.  *State's*

MEMORANDUM DECISION AND ORDER 4

*Exhibit A-1*, pp. 114-16.  After the court disposed of Petitioner's motion, the court held a hearing on Petitioner's co-defendant's motion to suppress.  Petitioner has presented a partial transcript of his *co-defendant's* hearing and wishes to expand the record with it.   *See Petitioner's Motion to Expand the Record, Exhibit B*, p. 3 (Docket No. 14-3).

Respondent objects because the Idaho appellate courts did not consider the transcript in deciding the Fourth Amendment issue.  However, the threshold issue facing  this Court is different -- whether Petitioner received a full and fair opportunity to litigate his claim in state court.  The Court will allow expansion of the record with the partial transcript of the co-defendant's suppression hearing because it contains evidence relevant to Petitioner's suppression issue, particularly, it definitively shows that Petitioner had signed a Fourth Amendment parolee waiver.

The Court will not order that a transcript be made of the abbreviated hearing held on *Petitioner's* motion because the facts presented at the hearing are not in dispute, only the legal significance of those facts.  The trial court relied on the facts in the preliminary hearing transcript, and that transcript is a part of the record before this Court.  *State's Exhibit A-3*. The Court concludes that the detailed minutes of Petitioner's short matter is sufficient for this Court's purposes. *State's Exhibit A-1*, pp. 114-16.  Therefore, Petitioner's Motion to Expand the Record is granted in part and denied in part.

MEMORANDUM DECISION AND ORDER 5

**C.    Petitioner's Motion for Telephonic Hearing (Docket No. 18)**

Petitioner requests a telephonic hearing so that he can present argument in opposition to the pending Motion for Summary Dismissal. The Court has considered whether oral argument would be helpful, and has determined that oral argument is unnecessary. As a result, this Motion is denied.

## RESPONDENT'S MOTION FOR PARTIAL SUMMARY DISMISSAL (Docket No. 8) AND REVIEW OF PETITIONER'S CLAIMS ON THE MERITS

**A.    Standard of Law**

When a motion to dismiss a habeas corpus petition is filed, the Court construes the facts in a light most favorable to the petitioner. When a court is considering a motion to dismiss, it may take judicial notice of facts outside the pleadings, including matters of public record. *Mack v. South Bay Beer Distributors*, 798 F.2d 1279, 1281 (9th Cir. 1986).[1] Accordingly, the Court shall take judicial notice of those portions of the state court record lodged by the parties.

Rule 4 of the Rules Governing § 2254 Cases authorizes the Court to summarily dismiss a petition for writ of habeas corpus when "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." The U.S. Supreme Court has held that federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits. *Lambrix v.*

---

[1] *abrogated on other grounds by Astoria Federal Sav. and Loan Ass'n v. Solimino*, 501 U.S. 104 (1991).

*Singletary*, 520 U.S. 518 (1997).  Where the question of procedural default presents a complicated question law and is unnecessary to a disposition of the case, a court may proceed to the merits.  *Id*. at 525; *Hudson v. Jones*, 351 F.3d 212 (6th Cir. 2003); *Nobles v. Johnson*, 127 F.3d 409, 423-24 (5th Cir.1997) (deciding against the petitioner on the merits even though the claim was procedurally defaulted); *cf*. 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

**B.   Fourth Amendment Claim**

   1.   <u>Standard of Law</u>

Petitioner's first claim is a Fourth Amendment search and seizure claim.  The threshold issue in a Fourth Amendment claim presented in a federal habeas corpus petition is whether the state provided the petitioner an opportunity for full and fair litigation of his claim in state court.  *Stone v. Powell*, 428 U.S. 465, 494 (1976).  If the federal district court determines that full and fair litigation of the claim took place in state court, then it cannot grant habeas corpus relief on the ground that the evidence was obtained in violation of the Fourth Amendment.  *Id*.

A federal district court must first "inquire into the adequacy and fairness of available state court procedures for the adjudication of Fourth Amendment claims."  *Sanna v. Dipaolo*, 265 F.3d 1, 8-9 (1st Cir. 2001) (internal citation omitted).  If the court determines that the state court procedures are adequate, the inquiry generally ends there.  *Id*.  That is, "[s]o long as a state prisoner has had an opportunity to litigate his Fourth Amendment claims by means

MEMORANDUM DECISION AND ORDER 7

of such a set of procedures, a federal habeas court lacks the authority, under *Stone*, to second-guess the accuracy of the state court's resolution of those claims." *Id.* at 9.  Stated another way, "[t]he relevant inquiry is whether petitioner had the opportunity to litigate his claim, not whether he did in fact do so or even whether the claim was correctly decided." *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996).  Petitioner bears the burden of establishing that the state courts did not consider the Fourth Amendment claim fully and fairly.  *Mack v. Cupp*, 564 F.2d 898, 901 (9th Cir. 1977).

       2.    <u>Discussion</u>

       The criminal charges against Petitioner arose when he was on parole.  At the preliminary hearing, parole investigation officer Kevin Kempf testified that Petitioner was a parolee, and was thus subject to a Fourth Amendment search and seizure waiver as a condition of his parole.  *State's Exhibit A-3*, p. 18.  Kempt had been enlisted by Petitioner's regular parole officer, who was having trouble locating him at his Garden City address.  *Id.* pp. 19-20.  Officer Stiles testified that they had found another man at the Garden City address, who had a day planner, and in the planner, Petitioner's home telephone number was listed as 376-2815.  Officers did a reverse telephone directory search of the number and received Patricia Rose's Russet Street address as a result.  *Id.* pp. 54-56.  Petitioner's truck was found in front of the Rose residence.  *Id.*, p. 56.

MEMORANDUM DECISION AND ORDER 8

The partial transcript of Rose's hearing that Petitioner supplied shows that he had a consent-to-be-searched provision in his parole agreement, which was marked and admitted into evidence at the hearing. *Petitioner's Motion to Expand the Record, Exhibit B*, p. 3 (Docket No. 14-3). Officers found Petitioner outside Rose's home, hiding in the bushes; nearby was a fanny pack containing night vision goggles, *id.*, pp. 49-50, 9 mm bullets, *id.*, p. 61, and some small plastic bags, *id.*, p. 62. Officers searched Petitioner's person and found $2,622 cash, ammunition, a cell phone, and a small plastic baggie. *Id.*; *State's Exhibit B-7*, p. 2.

Petitioner did not and does not allege that he resided at the Rose residence in Boise. He had a rental agreement for the Garden City mobile home and alleges that is where he lived.[2]

Rose consented to officers' entry into her home to search for Petitioner. There, officers found a fully loaded 9 mm firearm in the kitchen area in plain view. *State's Exhibit A-1*, p. 90. Officers also searched an apartment above Rose's residence that Rose identified as the place Petitioner had been living, and there they found another loaded 9 mm firearm, two large bags of marijuana weighing approximately 445 grams each, multiple sets of scales, packaging material, syringes, pipes, snort tubes, and prescription medication. *Id.*

After Petitioner's arrest, his appointed counsel, Stu Morrison, filed a motion to

---

[2] Elsewhere in the record, Petitioner admits that he moved evidence of the drugs from his house to his girlfriend's house. "I mean, I've told him that it was mine, that Patty had nothing to do with it, that I cleaned up my house because I knew the parole officers were coming. I took it all up to Patty's. She didn't know the pot was there." *State's Exhibit A-5*, p. 8.

suppress all of the evidence seized in the search of Petitioner, his apartment, and Rose's house, contending that the searches were unlawful for a variety of reasons. *State's Exhibit A-1*, p. 74. The court scheduled an evidentiary hearing on the suppression motion. *Id*., p. 114-16. The state district court determined that, relying on the preliminary hearing transcript and *State v. Pinson*, 657 P.2d 1095 (Idaho App. 1983), the search of his *person* was reasonable. *Id*., p.115.

At the hearing, Petitioner asserted that he did not live at the Rose residence. The court concluded that the preliminary hearing transcript established that officers had credible information to enter the residence. *Id*. At that point in the hearing, the court determined that Petitioner lacked standing to assert a suppression motion as to the items found in the search of *Rose's house*. The Court therefore denied Petitioner's motion for suppression, and then proceeded with the hearing as to Rose only. *Id*. at 115-16.

Petitioner proceeded to trial. On the second day of trial, Petitioner pled guilty and did not preserve the right to present the Fourth Amendment issue on appeal.[3] Petitioner raised the Fourth Amendment issue indirectly on appeal of his ineffective assistance claim in his post-conviction case. The Idaho Court of Appeals determined that his counsel was not ineffective for not pursuing the suppression issue further after the court's oral determination at the beginning of the suppression hearing that Petitioner would not be permitted to

---

[3] Respondent argues that Petitioner's allegation that his lawyer should have counseled him to enter a conditional plea and reserve the Fourth Amendment issue for appeal does *not* constitute the lack of a full and fair opportunity to litigate the Fourth Amendment issue in state court. The Court agrees. Rather, that constitutes a separate alleged ineffective assistance of counsel claim, which the Court discusses herein below.

participate in the hearing:

> A defendant seeking to suppress evidence has the initial burden of establishing standing.  *State v. Holland*, 135 Idaho 159, 162, 15 P.3d 1167, 1170 (2000).  Chippolla asserted in his petition, and continues to assert in this appeal, that he did not reside at the Russett Street address.  If this is so, then he had no standing to assert that a search of that residence violated *his* constitutional rights, for he had no legitimate expectation of privacy in the residence.  Accordingly, his motion to suppress would have failed if his attorney had continued to press it.  *See generally State v. Peters*, 130 Idaho 960, 961-62, 950 P.2d 1299, 1300-01 (Ct. App. 1997).  If, on the other hand, Chippolla did reside at the Russett Street residence, his parole consent would have authorized the search of the residence, and his motion to suppress would still fail.  *Id.*  Because Chippolla could not prevail under either factual scenario, his counsel cannot be held to be ineffective for failing to continue to pursue the suppression motion.

*State's Exhibit D-14*, pp. 5-6.  Therefore, Petitioner did have an opportunity for review of the Fourth Amendment issue in the context of an ineffective assistance of counsel claim.  He would not have fared differently on review of the issue had he presented it as a claim on direct appeal.

Based on all of the foregoing, this Court concludes that Petitioner has failed to meet his burden of establishing that the state courts did not consider the Fourth Amendment claim fully and fairly.  Petitioner's counsel filed a proper motion, and the Court scheduled a hearing.  However, relying on the preliminary hearing transcript and undisputed facts, the Court determined that, based on prevailing Idaho case law, Petitioner's status as a parolee and the attendant consent to be searched as a condition of parole foreclosed his ability to show that the items found on his person should have been suppressed.  Petitioner has not shown that having a full evidentiary hearing on this issue would have resulted in a different

conclusion.

Neither was a full hearing necessary to conclude that Petitioner had no standing to contest the seizure of items found at the Rose residence.  Petitioner argues that because he resided at the Garden City mobile home and had receipts to show that he paid rent for the relevant time period, he has proven that he did not actually "abscond" from parole supervision, and thus, officers had no reason to search his person.  However, whether Petitioner *had, in fact,* absconded is not the determining factor -- rather, it is whether the investigating parole officer had *reasonable grounds* to believe that Petitioner had absconded.  Explaining this principle relative to the standard of probable cause, which is slightly higher than the "reasonable grounds" standard required in a parolee consent-to-search instance such as Petitioner's, the Supreme Court observed:

> As the Court frequently has remarked, probable cause [for a search] is a flexible, common-sense standard.  It merely requires that the facts available to the officer would "warrant a man of reasonable caution in the belief," *Carroll v. United States*, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925), that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false.

*Texas v. Brown*, 460 U.S. 730, 742 (1983).[4]

---

[4]  Indeed, in parolee consent-to-search cases, the standard is less than probable cause; it is only "reasonable grounds," *see Griffin v. Wisconsin*, 483 U.S. 868, 872-73 (1987), or a "reasonable suspicion," *U.S. v. Knights*, 534 U.S. 112, 121 (2001) ("Although the Fourth Amendment ordinarily requires the degree of probability embodied in the term 'probable cause,' a lesser degree satisfies the Constitution when the balance of governmental and private interests makes such a standard reasonable. Those interests  warrant a lesser than probable-cause standard here.").

MEMORANDUM DECISION AND ORDER 12

An evidentiary hearing in state court is not required in every instance for a full and fair consideration of Fourth Amendment issues.  Rather, here, the state district court relied on Petitioner's consent to his parole conditions and Petitioner's own statement of non-residency to support the decision that suppression was not warranted.  Under the circumstances, this was all the consideration and process due.  The Court concludes that Petitioner is foreclosed from re-litigating the Fourth Amendment issue on federal habeas corpus review.

Alternatively, this claim is subject to denial on the merits.  To prevail on the merits, Petitioner bears the burden of proving that the state court judgment either "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or that it "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).[5]

The United States Supreme Court has twice recently declined to rule on the issue of

---

[5]  Petitioner argues that *U.S. v. Crawford*, 372 F.3d 1048 (9th Cir. 2004), supports his position that the search was unlawful.  It does not.  In particular, that Court noted:

> We need not and do not decide whether "Fourth Waivers" are valid, what they mean, or whether suspicionless parole searches violate the Fourth Amendment. Instead, we proceed to examine the Supreme Court precedents that govern an analysis of the relationship between an illegal detention or illegal search and a defendant's confession. Under those precedents, Defendant's confession is admissible.

372 F.3d at 1054.  In any event, a federal district court cannot overturn a state court decision on habeas review because of a conflict with Ninth Circuit law.  *Duhaime v. Ducharme,* 200 F.3d 597 (9th Cir. 1999).

MEMORANDUM DECISION AND ORDER 13

whether a search based on a parolee's consent to suspicionless searches at any time as a condition of his parole functions as a *complete* waiver of a parolee's Fourth Amendment right. *Samson v. California*, 547 U.S. 843, --, 126 S.Ct. 2193, 2199 n.3 (2006); *see also United States v. Knights*, 534 U.S. 112 (2001).[6]  Rather, the current test is whether the warrantless search was supported by a reasonable suspicion and authorized by a parole or probation condition.   A search provision of probation "significantly diminishe[s] [a probationer's] reasonable expectation of privacy." *Knights*, 534 U.S. at 119.  In *Knights*, the particular issue was whether probation officers could search the probationer only on suspicion of probation violations, or whether they could also search him if they suspected him of committing a new crime. *Id.*, 120-21.  The Court concluded that both purposes were reasonable. *Id*.

Here, Petitioner has failed to point to any fact in the record showing that the searches were not reasonable or were not performed under the parole officer's authority, consistent with the consent given by Petitioner in his parole agreement.  Rather, it is undisputed that Petitioner was *suspected* of absconding from supervision; that the investigating parole officer, Officer Kempf, was engaged in locating Petitioner; that Petitioner was not at his residence in Garden City late at night; that Petitioner was found hiding outside Rose's Boise home; that Petitioner had a Fourth Amendment waiver in place as a parolee; and that

---

[6]  Because the search at issue in *Knights* was predicated on both the probation search condition and reasonable suspicion, the court did not reach the question whether the search would have been reasonable under the Fourth Amendment had it been solely predicated upon the condition of probation.

MEMORANDUM DECISION AND ORDER 14

Petitioner did not live at the Rose residence.  As a result, the search satisfies the *Knights* standard.  Petitioner's Fourth Amendment claim is without merit.  As a result, Petitioner has failed to show that he is entitled to habeas corpus relief under § 2254(d)(1) or (2).

## C.    All Other Claims: Procedural Default and Alternative Grounds for Denial

### 1.    Standard of Law

A federal habeas petitioner must first exhaust his state court remedies as to all of his constitutional claims before presenting them to the federal court.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  Unless a petitioner has exhausted his state court remedies relative to a particular claim, a federal district court may deny the claim on its merits, but it cannot otherwise grant relief on such unexhausted claims.  28 U.S.C. § 2254(b).  The petitioner can satisfy the exhaustion requirement by showing that (1) he has "fairly presented" his federal claim to the highest state court with jurisdiction to consider it (proper exhaustion), or (2) that he did not present the claim to the highest state court, but no state court remedy is available when he arrives in federal court (improper exhaustion).  *Johnson v. Zenon*, 88 F.3d 828, 829 (9th Cir. 1996) (citations omitted).

To exhaust a habeas claim properly, a habeas petitioner must invoke one complete round of the state's established appellate review process, giving the state courts a full and fair opportunity to correct the alleged constitutional error at each level of appellate review. *Baldwin v. Reese*, 541 U.S. 27 (2004).  "[O]rdinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material,

MEMORANDUM DECISION AND ORDER 15

such as a lower court opinion in the case, that does so." *Id*. at 32.

The mere similarity between a state law claim and a federal claim does not constitute fair presentation of the federal claim. *See Duncan v. Henry*, 513 U.S. 364, 365-66 (1995). General references in state court to broad constitutional principles, such as due process, equal protection, and the right to a fair trial, are likewise insufficient. *See Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999).

In *Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir. 2003), the Ninth Circuit held that citing to either a federal or a state case analyzing a federal constitutional issue is considered proper presentation of a federal claim. However, in *Casey v. Moore*, 386 F.3d 896, 912 (9th Cir. 2004), the Ninth Circuit clarified that where "the citation to the state case has no signal in the text of the brief that the petitioner raises federal claims or relies on state law cases that resolve federal issue, the federal claim is not fairly presented." In *Castillo v. McFadden*, 399 F.3d 993 (9th Cir. 2005), the court further clarified that, "[t]o exhaust his claim, [a petitioner] must have presented his federal, constitutional issue before the [state appellate courts] within the four corners of his appellate briefing." *Id*. at 1000 (citing *Baldwin*).

Improperly exhausted claims are deemed "procedurally defaulted." Procedurally defaulted claims include those where: (1) a petitioner has *completely failed* to raise a particular claim before the Idaho courts; (2) a petitioner has raised a claim, but has failed to fully and fairly present it as a *federal* claim to the Idaho courts, as discussed above; or (3) the

MEMORANDUM DECISION AND ORDER 16

Idaho courts have rejected a claim on an independent and adequate state procedural ground.[7]

If a petitioner's claim is procedurally defaulted, the federal district court cannot hear the merits of the claim unless a petitioner meets one of two exceptions: a showing of adequate legal cause for the default and prejudice arising from the default; or a showing of actual innocence, which means that a miscarriage of justice will occur if the claim is not heard in federal court.  *See Murray v. Carrier*, 477 U.S. 478, 488 (1986);  *Schlup v. Delo*, 513 U.S. 298, 329 (1995).

Finally, when the federal district court performs a review of a habeas corpus petition, a petition from a state prisoner "who is proceeding pro se may be viewed more leniently for exhaustion purposes than a petition drafted by counsel."  *Fields v. Waddington*, 401 F.3d 1018, 1021 (9th Cir. 2005).  Here, Respondent argues that Petitioner's second through fourth claims and the majority of the subparts of the fifth claim are procedurally defaulted and subject to dismissal.

---

[7] *See Martinez v. Klauser*, 266 F.3d 1091, 1093-94 (9th Cir. 2001) (quoting *Wells v. Maass*, 28 F.3d 1005, 1010 (9th Cir. 1994)).

MEMORANDUM DECISION AND ORDER 17

2.    Discussion of Second Claim

Petitioner's second claim is that the plea agreement process violated his Fifth and Fourteenth Amendment due process rights, as well as his Eighth Amendment right to be free from cruel and unusual punishment.  It appears that he is alleging that his plea was not knowing, intelligent, and voluntary.  He alleges that he pled guilty only to possession,  not to trafficking, during the plea colloquy.

On direct appeal, Petitioner's notice of appeal from the district court's order denying his motion to withdraw his guilty plea was consolidated with his notice of appeal from the court's orders denying his Rule 41(e) and Rule 35 motions.  After consolidation, Petitioner failed to raise or brief the withdrawal-of-his-guilty-plea issue in his appellate briefs.  Therefore, the Idaho Court of Appeals dismissed on state procedural grounds Petitioner's appeal from the denial of the motion to withdraw the guilty plea.  *See State's Exhibit B-7*, p. 6.  Because Petitioner did not provide *any* legal argument or briefing on the guilty plea claim, let alone any federal law, and because Petitioner's appeal was dismissed on adequate and independent state procedural grounds, it is procedurally defaulted.[8]

When Petitioner presented this claim again on post-conviction review, he fared no better.  In the post-conviction appeal, the Idaho Court of Appeals characterized his claim as one that his "guilty plea, is . . . constitutionally infirm. . . ."  *State's Exhibit C-14*, p. 3.  The appellate court determined that the trial court record essentially "conclusively disprove[d]

---

[8]  *See* I.A.R. 35(a)(4); *State v. Crowe*, 131 Idaho 109, 111, 952 P.2d 1245, 1247 (1998).

MEMORANDUM DECISION AND ORDER 18

essential elements of [his] claims," and it affirmed denial of the claim. *Id.* In Petitioner's brief in support of his petition for review, he argued that the Idaho Court of Appeals had erroneously relied on only the post-conviction hearing transcript rather than the guilty plea hearing transcript. *State's Exhibit D-6.*

Respondent argues that Petitioner's failure to cite to the Constitution or other legal authority in his brief in support of the petition for review does not constitute "fair presentation" of his claim. In *Fields v. Waddington*, the Ninth Circuit Court emphasized: "In order to alert the state court, a petitioner must make reference to provisions of the federal Constitution or must cite either federal or state case law that engages in a federal constitutional analysis." 401 F.3d at 1021. Here, even if the Court liberally construes Petitioner's brief in support of his petition for review, the brief did not alert the Idaho Supreme Court that there was federal constitutional claim at issue. An issue is not fairly presented when "an appellate judge can discover that claim only by reading lower court opinions in the case." *Baldwin v. Reese*, 541 U.S. at 31. The Court agrees that Petitioner did not fairly present his claim as a constitutional claim to the Idaho Supreme Court.

Alternatively, the Court concludes that Petitioner's claim that he did not know that he was pleading guilty to "trafficking" in marijuana is subject to denial on the merits. To prevail on the merits, Petitioner bears the burden of proving that the state court judgment either "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or that it "resulted in a decision that was based on an unreasonable determination of

MEMORANDUM DECISION AND ORDER 19

the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. §
2254(d).

A plea is "knowing" if a defendant understands the federal constitutional rights he is
waiving by pleading guilty, and it is "voluntary" if he "possesses an understanding of the law
in relation to the facts."  *Boykin v. Alabama*, 395 U.S. 238, 243 n.5 (quoting *Johnson v.
Zerbst*, 304 U.S. 458, 466 (1938)). Another definition of "voluntary and intelligent" is if the
plea "represents a voluntary and intelligent choice among the alternative courses of action
open to the defendant."  *North Carolina v. Alford*, 400 U.S. 25, 31 (1970).

This Court agrees with the Idaho Court of Appeals that the trial court record
essentially "conclusively disproves essential elements of [Petitioner's] claims." *State's
Exhibit C-14*, p. 3.  The transcript of the guilty plea hearing shows that the judge adequately
explained -- and had Petitioner explain back to him -- that possession of marijuana in excess
of one pound constituted "trafficking":

> Judge:      What do you understand this law or this crime of possession of
>             marijuana in excess of a pound -- they call it trafficking, possession in
>             excess of a pound. What do you understand that law says?
>
> Petitioner:  If I have more than a pound, I'm going to sell marijuana.

*State's Exhibit A-5*, p. 11.

Nothing in the record supports Petitioner's assertion that he believed he was pleading
down to simple possession.  The record is clear that Petitioner understood that the charge was
"possession of [] one pound of marijuana or more," or "trafficking," Idaho Code § 37-
2732B(a)(1)(A); that he was waiving his federal rights to put on a defense (he was already

MEMORANDUM DECISION AND ORDER 20

in the midst of a jury trial); that he had chosen among alternative courses of action in order to appease his conscience and save his girlfriend from further involvement in the criminal justice system; and that he admitted the marijuana was his and his girlfriend had nothing to do with the crime. *See State's Exhibit C-14.*

The Idaho Court of Appeals' opinion is consistent with the federal precedent cited above, and it is consistent with the facts presented in the record. Petitioner's attempt to isolate a small portion of the guilty plea hearing transcript and ignore the fact that transcript shows he heard and knew that he was pleading guilty to possession of one pound or marijuana or more, which constitutes trafficking, is disingenuous. Because his claim fails to meet either 28 U.S.C. § 2254(d)(1) or (d)(2), it is subject to denial on the merits.

3.    Discussion of Third Claim

Petitioner's third claim is a suppression of evidence claim under *Brady v. Maryland*, 373 U.S. 83 (1963). Petitioner asserts that the serial numbers of the seized guns were not turned over to the Bureau of Alcohol, Tobacco, and Firearms (ATF) or to his trial attorney. Petitioner asserts that another person was the registered owner of one of the guns. He states he would not have pled guilty to possession of a firearm if he had been given the results from the ATF inquiry.

In the state court system, Petitioner's *Brady* claim was presented only as an ineffective assistance of counsel claim. *State's Exhibit D-16*, pp. 4-5 & *D-9*, pp. 4-6. The Idaho Court of Appeals considered it only as an ineffective assistance of counsel claim. It is now too late to present a *Brady* claim to the Idaho appellate courts. *State's Exhibit D-14,* p. 6. As a result, the claim is procedurally defaulted and cannot be heard in federal court absent a showing of cause and prejudice or actual innocence. However, such a showing is not necessary, because the claim is subject to denial on the merits.

Petitioner particularly alleges that the prosecution had obtained a record showing that one of the guns was not registered to him but failed to turn the record over to Petitioner's counsel, an alleged *Brady* violation. In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."

In the context of evaluating the *Brady* claim as part of Petitioner's ineffective assistance of counsel claim, the Idaho Court of Appeals determined that Petitioner had never shown that such a record existed or that it would have aided his defense. *State's Exhibit D-14*, p. 6. The Court of Appeals concluded that Petitioner had not met his burden of proof to show that evidence of the registered owner of the gun was material to his defense, an essential element of a *Brady* claim, or that he was prejudiced by his counsel's failure to

MEMORANDUM DECISION AND ORDER 22

obtain the record, an essential element of a *Strickland* claim.[9]

A review of the state court record, in light of the *Brady* standard, convinces this Court that Petitioner's claim does not warrant relief under either 28 U.S.C. § 2254(d)(1) or (d)(2). Nothing in the record substantiates Petitioner's assertion that one of the guns belonged to another person. Bullets found on Petitioner matched those found in the loaded gun. *State's Exhibit D-14*, p. 6. The felon-in-possession-of-a-gun charge does not require that the felon actually own the gun. *Id*. Finally, even if one of the guns was owned by another person, elsewhere in the record Petitioner admitted that the gun found on the stove in Rose's house was his own gun, and he had left it there because he knew the police were outside, and he further admitted that he had "control and dominion over [his gun]" at the time of his arrest *State's Exhibit A-5*, p. 15. Therefore, the Court denies this claim on its merits both as a *Brady* claim, and as a *Strickland* ineffective assistance of counsel claim.

4.   Discussion of Fourth Claim

Petitioner's fourth claim is that his Fifth and Fourteenth Amendment due process rights were violated when the court ordered Petitioner's defense attorney to have a drug evaluation done on Petitioner to be paid with state funds, and that counsel failed to have the

---

[9] In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court established the proper test to be applied to claims alleging constitutionally inadequate representation. To succeed on such a claim, a petitioner must show that (1) counsel's performance was deficient in that it fell below an objective standard of reasonableness and that (2) the petitioner was prejudiced thereby. *Id*. at 684. Prejudice under these circumstances means that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id*. at 684, 694. A reasonable probability is one sufficient to undermine confidence in the outcome. *Id*. at 694.

evaluation done.  Petitioner asserts he had a drug addiction and mental disorders at the time, and that his counsel did not properly address these issues as mitigating circumstances at sentencing.

The Court agrees that this is merely a state-law claim.  Errors in state law cannot be turned into federal claims by citing the Due Process Clause.  *Poland v. Stewart*, 169 F.3d 573, 584 (9th Cir. 1999) (citing *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1997)).  In addition, because there is no United States Supreme Court precedent providing for a due process right to have a drug evaluation performed prior to sentencing, this fails to state a claim upon which relief can be granted on habeas corpus review.  *See* 28 U.S.C. § 2254(d)(1).

        5.    Discussion of Fifth Claim

Petitioner's fifth claim is that his Fifth and Fourteenth Amendment due process and equal protection rights and his Sixth Amendment right to effective assistance of counsel were violated when his defense attorney committed multiple errors during plea negotiations and at sentencing, particularly: (1) allowing Petitioner to be sentenced to trafficking when he pled guilty only to possession; (2) failing to object to the alleged *Brady* violation; (3) failing to investigate "exculpatory material"; (4) failing to arrange for the court-ordered drug evaluation; (5) not knowing the controlling constitutional case law for any of the issues

MEMORANDUM DECISION AND ORDER 24

raised in this habeas action and not knowing there were any issues; and (6) failing to explain conditional pleas to preserve appeal rights.

Petitioner did not raise any of these issues as Fifth or Fourteenth Amendment claims on appeal.  *See State's Exhibits D-9 & D-16.*  These claims are procedurally defaulted.  The Court alternatively rejects them on due process grounds for the lack of an adequate factual basis as explained with regard to the treatment of these issues as  Sixth Amendment claims, as addressed directly below.

(1)     *allowing Petitioner to be sentenced to trafficking when he pled guilty only to possession*

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court established the proper test to be applied to claims alleging constitutionally inadequate representation.  To succeed on such a claim, a petitioner must show that (1) counsel's performance was deficient in that it fell below an objective standard of reasonableness and that (2) the petitioner was prejudiced thereby.  *Id*. at 684.  Prejudice under these circumstances means that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id*. at 684, 694.  A reasonable probability is one sufficient to undermine confidence in the outcome.  *Id*. at 694.

The state district court held an evidentiary hearing on the issue of whether Attorney Morris had been ineffective regarding Petitioner's allegation that he thought he was pleading guilty to possession rather than trafficking.  After hearing, the court issued a written order, observing: "The Court, during the course of the hearing in this matter, heard the testimony

MEMORANDUM DECISION AND ORDER 25

of Mr. Morris and will find that his testimony is credible and accurate and that the testimony of the Petitioner is not trustworthy or believable." *State's Exhibit C-1*, p. 36.  The state district court concluded that Petitioner had been advised of the charge, knew the charge he was pleading to, and freely admitted all of the allegations of the charges against him.  *Id.* The Idaho Court of Appeals concluded likewise.  *State's Exhibit D-14*, p. 3.

Under AEDPA, "[f]actual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); 28 U.S.C. § 2254(e)(1).  As a result, a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340; 28 U.S.C. § 2254(d)(2).        Here, Petitioner has brought forward nothing to adequately rebut the state district court's factual finding that his testimony on this subject was not trustworthy or believable.  The transcript from the guilty plea hearing substantiates the state court's finding.  As a result, the Idaho Court of Appeals' decision is not objectively unreasonable in light of the evidence before it.  Because Petitioner has failed to show deficient performance or prejudice, his claim is subject to denial on the merits.

(2)     *failing to object to the alleged Brady violation*

As set forth above, because the underlying *Brady* claim has no merit, the corresponding ineffective assistance of counsel claim has no merit for lack of showing prejudice to Petitioner's defense.  This claim is denied on the merits.

(3)     *failing to investigate "exculpatory material"*

MEMORANDUM DECISION AND ORDER 26

Petitioner states in his Petition only that his counsel "did not investigate the exculpatory material himself or hire an investigator to do this for him." *Petition*, p. 8 (Docket No. 3). The only material Petitioner deems exculpatory is the gun owner registration information. Elsewhere in the record, Petitioner admits both that one of the guns was his (*State's Exhibit A-5*, p. 15), and that he was, in fact, selling marijuana to his friends *(State's Exhibit A-5*, p. 29). As the Court noted above, because the information about ownership of the guns is not exculpatory, the claim is subject to denial on the merits.

(4)   *failing to arrange for the court-ordered drug evaluation*

Petitioner alleges that counsel was too busy to arrange to have a drug evaluation performed on Petitioner for sentencing. Petitioner argues that a drug evaluation would have shown that at the time of arrest, Petitioner was involved in a dual diagnostic treatment program for people with a drug addition and a mental illness, and that he was seeing a psychiatrist for chronic severe depression, suicidal thoughts, bipolar disorder, and paranoia. He asserts that these factors were not properly presented to the sentencing court as mitigating circumstances.

At the sentencing hearing, Petitioner's counsel described Petitioner's diagnosis of bipolar disorder and depression. Counsel stated that he attempted to obtain a psychological evaluation that had been performed more than five years earlier, but that it had been destroyed. Counsel argued, "I suspect and suggest to the court that [the mental disorder] [i]s a mitigating factor." *State's Exhibit A-5*, p. 25. Counsel then relayed how upon release on parole Petitioner had been enrolled in the Salvation Army program, but the program director

MEMORANDUM DECISION AND ORDER 27

would not allow him to attend the program if he were taking medication. Petitioner stopped taking his prescription medication so that he could attend the program, and then he started relapsing and using illegal drugs again. The Salvation Army director told him he should try to attend the Orofino program, because it allowed people to remain on their medications. Petitioner did not want to ask his parole officer if he could attend the Orofino program because he would also have to admit that he had started using drugs again. Instead, he went to the Saint Alphonsus mental health unit. Unfortunately, the unit was closed down shortly thereafter without advance notice to any of the patients. Petitioner was forced to leave and live in his car for a time until he found his mobile home rental. *Id.*, pp. 26-27. Petitioner later began selling drugs to his friends. *Id.*, p. 29.

The information Petitioner's counsel presented is essentially the information that Petitioner argues was not presented. The difference is that counsel did not have an expert opinion to support his statements.

The sentencing judge determined:

> At this point, there have been discussions, some inferences about your mental state. And certainly, what I have observed is that you have been able to track the proceedings and be of assistance to counsel. And I'm not saying that Mr. Morris had indicated something different than that and I think that you do fundamentally know right from wrong.
>
> I think your problems are threefold: one, you are addicted to drugs; two, because of the lengthy time that you have been institutionalized, you have developed that mentality; and I think, thirdly, I think in large part from your upbringing, you just lack some of those core values that I think many times are incumbent within a faith in a higher power.
>
> And as a result of that, your record is extensive. I have to sentence you based upon the record and the information before the this court.

MEMORANDUM DECISION AND ORDER 28

*State's Exhibit A-5*, p. 32.

On appeal of the post-conviction matter, the Court of Appeals decided that Petitioner

had not proven that any prejudice resulted from counsel's failure to obtain a drug evaluation:

> Chippolla failed to procure an evaluation and place it into evidence in the post-convictions proceedings, a necessary predicate for a showing of prejudice to support his claim of ineffective assistance.  In this circumstance, we will not presume that an evaluation would have been helpful to Chippolla's cause, for it is just as likely that it would not have been.  Chippolla has failed to  . . . demonstrate any prejudice arising from the absence of a substance abuse evaluation.  *State v. Furlong*, 132 Idaho 526, 529, 975 P.2d 1191, 1194 (Ct. App. 1999).  The district court did not err in denying relief on this claim.

*State's Exhibit D-14*, p. 6.

By statute, certain drug crimes require that a substance abuse evaluation be performed.

Petitioner's crime was not a crime subject to a mandatory substance abuse evaluation, but the

judge permitted it and allocated the funds for it.  However, even where the substance abuse

evaluation is mandatory, the sentencing court is required only to "take the evaluation into

consideration to determine an appropriate sentence."  Idaho Code § 37-2738 (3).  As a result,

the sentence may include substance abuse treatment for the defendant.  *Id*.  Incidentally,

Petitioner does not argue how his sentence would have been different if he had undergone

a substance abuse evaluation, given that he had an extensive criminal history.

MEMORANDUM DECISION AND ORDER 29

Here, the sentencing court openly acknowledged and considered the fact that Petitioner was a drug addict.  The court did not find that Petitioner exhibited any signs of being unable to aid in his defense or unable to distinguish right from wrong.  On post-conviction review, Petitioner did not present the state court with a drug evaluation or any mental health records suggesting that any additional information about his drug addiction or his mental disorders would have led the sentencing judge to make a different conclusion or pronounce a different sentence.  Petitioner had over thirty arrests in his past, had been institutionalized for a large portion of his adult life, and this was the second time he had failed parole by committing other crimes while on parole. *State's Exhibit A-5*, p. 21-23. Petitioner avoided persistent violator charges only because he pled guilty.  *Id*., p. 18.

Based on all of the foregoing, the Court concludes that the decision of the Idaho Court of Appeals that Petitioner has failed to show prejudice from the lack of a drug evaluation at sentencing is not an unreasonable application of *Strickland*.  Neither has there been an unreasonable determination of the facts presented; Petitioner failed to present any additional facts to the state courts to show what a drug evaluation might have shown and how it might have affected sentencing.  As a result, this portion of the ineffective assistance of counsel claim is subject to denial.

(5)     *not knowing the controlling constitutional case law for any of the issues raised in this habeas action and not knowing there were any issues*

Petitioner argues that his counsel did not know controlling federal constitutional case law and did not recognize federal constitutional issues that arose during Petitioner's case.

MEMORANDUM DECISION AND ORDER 30

Petitioner particularly states that counsel did not explain conditional pleas to preserve the suppression issue for appeal, unreasonable search and seizure, or the "illegal use of a parole Fourth [Amendment] waiver." *Petition*, p. 8 (Docket No. 3). Because the Court has determined that none of these issues were or would have been successful on appeal, Petitioner's allegations do not amount to ineffective assistance of counsel. As a result, this claim is subject to denial on the merits.

(6)   *failing to explain conditional pleas to preserve appeal rights*

Petitioner's claim that his counsel failed to explain conditional pleas to preserve his right to appeal the suppression issue fails because Petitioner's suppression claims are without merit. As discussed above, the search of Petitioner's person was legal because Petitioner had waived his Fourth Amendment rights as a parolee. In addition, Petitioner did not have standing to contest the search of Rose's residence because he did not reside there. Had counsel preserved these issues and raised them on appeal, they would have failed, as they did in Petitioner's efforts to raise this issue as an ineffective assistance claim on appeal of his post-conviction matter. *See State's Exhibit D-14*, pp. 4-6. There was neither deficient performance nor prejudice. As a result, this claim is denied on the merits.

**D.     Conclusion**

For the foregoing reasons, the Court concludes that the Fourth Amendment claim was fully and fairly presented in the state court system, and thus cannot be contested again here; in the alternative, the Court determines that the Fourth Amendment claim is without merit. The Court also concludes that a number of Petitioner's other claims are subject to dismissal

MEMORANDUM DECISION AND ORDER 31

on procedural default grounds.  The Court will not provide Petitioner with an opportunity to show cause and prejudice or a miscarriage of justice because the claims are alternatively subject to denial on the merits based on the facts presented in the Petition and the state court record.  Petitioner's fourth claim is a noncognizable state-law claim, or if it is construed as a federal claim, it is without merit for lack of any supporting United States Supreme Court precedent.  Finally, all of Petitioner's ineffective assistance of counsel claims are without merit and are subject to denial on the merits based on the facts presented in the Petition and the state court record.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Respondent's Motion for Partial Summary Dismissal (Docket No. 8) is GRANTED.

IT IS FURTHER HEREBY ORDERED that the Court has reviewed the merits of Petitioner's claims on the record and has determined that all of Petitioner's claims are subject to denial on the merits.  Petitioner's Petition is DISMISSED with prejudice.

IT IS FURTHER HEREBY ORDERED that Petitioner's Motion for Extension of Time to File Response (Docket No. 11) is GRANTED.  The Court has considered all of Petitioner's filings.

IT IS FURTHER HEREBY ORDERED that Petitioner's Motion to Expand the Record (Docket No. 14) is GRANTED in part and DENIED in part as set forth above.

IT IS FURTHER HEREBY ORDERED that Petitioner's Motion for Telephonic Hearing (Docket No. 18) is DENIED.

MEMORANDUM DECISION AND ORDER 32



DATED:  **March 6, 2008**

Honorable Edward J. Lodge
U. S. District Judge